**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 12 B 18946 |
| SAUNDERS G. YAO, | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| KELLY CUSTER, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 23 A 361 |
| | ) | |
| v. | ) | |
| | ) | Judge David D. Cleary |
| SAUNDERS G. YAO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER DENYING MOTION TO DISMISS**

Plaintiff Kelly Custer ("Custer" or "Plaintiff") filed a three-count complaint ("Complaint") against Defendant Saunders Yao ("Yao" or "Defendant"), seeking a finding that Defendant's debt to her is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(3). Defendant filed a motion to dismiss ("Motion to Dismiss") the Complaint. The court entered a briefing schedule, and the parties timely filed a response in opposition to the Motion to Dismiss ("Response") and a reply in support ("Reply"). The court then took the Motion to Dismiss under advisement.

Having reviewed the Complaint and the papers submitted, the court will deny the Motion to Dismiss.

## I.    JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

## II.    BACKGROUND

In resolving a motion to dismiss, the court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Every allegation that is well-pleaded by a plaintiff is taken as true in ruling on the motion. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289-90 (7th Cir. 2016). For purposes of deciding this motion, the court accepts well-pleaded allegations as true, and takes judicial notice of certain other facts.

In June 1998, Yao approached Custer. He told her that he was raising money to fund the acquisition and renovation of two properties, 8012 South Shore Drive and 8258 S. Marshfield, both in Chicago, Illinois (collectively, the "Properties"). (Complaint, ¶ 8.)

Yao told Custer that if she invested $42,000, he would sell the Properties in one year and return her investment with $14,000 in profit. (*Id.*, ¶ 9.)

Yao represented to Custer that he had over eighteen years of experience in purchasing real properties, renovating those properties, and then selling those properties for a profit. (*Id.*, ¶ 53.)

At the time, Custer worked as a massage therapist and was not familiar with the purchase, rehabilitation, and sale of real property. (*Id.*, ¶ 51.)

On July 3, 1998, Yao asked Custer to execute a "Real Estate Investment Agreement" ("Agreement") detailing the terms of her investment. (*Id.*, ¶ 10 and Exhibit A).

2

The Agreement identifies a third party, Help Self and Others, Inc. ("Help Self").  Help Self, an Illinois corporation, was solely owned by Yao and was dissolved on May 1, 2001.  (*Id.*, ¶¶ 11-13.)

Yao signed the Agreement in his personal capacity.  Help Self did not execute the Agreement.  (*Id.*, ¶¶ 14-15.)

The Agreement states that Custer will invest $42,000 in the Properties, and her investment will have a term of one year.  "Saunders shall pay to Kelly $14,000.00 from the proceeds of the two sales (at closing) plus the $42,000.00 invested.  The total pay out to Kelly shall be $56,000.00."  (*Id.*, Exhibit A.)

Custer paid Yao $42,000.  Following that initial investment, Yao insisted that she pay an additional $24,500 so that the repairs and rehabilitation of the Properties could be completed. (*Id.*, ¶¶ 18-19.)

Yao did not present Custer with a deed or other proof that he owned the Properties. Neither did he present Custer with any invoices, lien waivers, or other proof of materials or services purchased in connection with, or furtherance of, the rehabilitation of the Properties. (*Id.*, ¶¶ 79-80.)

Custer paid Yao a total of $63,700.48.  After the term of the Agreement had expired, Custer demanded the return of her investment, along with the profits.  (*Id.*, ¶¶ 21-22.)

Yao did not repay Custer either the investment or the profit.  He failed to respond to Custer's demand for payment.  Custer eventually discovered that neither Yao nor Help Self had purchased, owned or renovated the Properties.  (*Id.*, ¶¶ 23-27.)

On or about December 28, 1999, Custer sued Yao in the Circuit Court of Cook County, in the matter styled *Kelly Todar v. Saunders G. Yao, et al.*, Case No. 1999 L 014642 ("Lawsuit").

In the Lawsuit, Custer sought relief under two counts: Count I for breach of contract; and Count II for common law fraud.  (*Id.*, ¶¶ 28-29.)

The common law fraud count included allegations that Yao made false statements of material fact, and representations that he knew were false.  (Motion to Dismiss, Ex. A.)

On March 15, 2001, the Circuit Court entered an agreed judgment in favor of Custer and against Yao in the amount of $63,700.48 plus interest ("Agreed Judgment").  (*Id.*)

The Agreed Judgment states, in part:

This matter coming on to be heard on Plaintiff Kelly Todar's Motion for Entry of the parties' Agreed Judgment Order, due notice having been given, the parties being in agreement, and the Court being fully advised in the premises, IT IS HEREBY ORDERED:

1)  that judgment is entered in favor of the Plaintiff and against the Defendants in the total amount of $63,700.48, plus prejudgment interest at the rate of five percent (5%) per annum, from May 1, 1999 to and including the date this Order is entered;

2)  that Count II of Plaintiff's First Amended Verified Complaint is dismissed with prejudice, and without costs, interest and attorneys' fees[.]

(*Id.*)

Yao filed for relief under chapter 7 of the Bankruptcy Code on May 9, 2012 ("First Case").  (*See* Case 12 B 18946, EOD 1.)  The name of Custer and her attorneys of record in the Lawsuit were known to Yao when he filed the First Case.  (Complaint, ¶ 96.)

Yao did not include Custer or her attorneys of record in the Lawsuit on his schedules in the First Case.  Neither Custer nor her attorneys of record in the Lawsuit were given notice of the First Case, nor were they aware of it.  (*Id.*, ¶¶ 31-32.)

Neither Custer nor her attorneys of record in the Lawsuit were given notice, nor were they aware of: (1) the first meeting of creditors in the First Case; (2) the last day by which

4

creditors must file objections to the debtor's discharge or the discharge of certain debts in the First Case; or (3) the entry of discharge in the First Case.  (*Id.*, ¶ 33.)

Yao filed Case No. 23 B 4349 on March 31, 2023 ("Second Case").  On September 7, 2023, Custer filed 23 A 275 within the Second Case, seeking substantially the same relief as in this Complaint.  Defendant brought a motion to dismiss 23 A 275, which the court granted.  (*See generally*, docket in 23 B 4349 and 23 A 275.)  The court closed the Second Case on November 13, 2023.

Around the same time, Custer brought a motion to reopen the First Case, which this court granted.  (*See* Case 12 B 18946, EOD 23 and 25.)  On November 20, 2023, Custer filed this adversary proceeding.

### III.  LEGAL DISCUSSION

#### A.  Contentions of the Parties

In the Motion to Dismiss, Defendant argues that the court should dismiss the Complaint based on the doctrine of res judicata.  He asserts that the Complaint concerns the same parties, contract, facts and issues as the Lawsuit, for which the Agreed Judgment was entered in 2001. Since the Agreed Judgment dismissed the common law fraud count with prejudice, Defendant contends that Plaintiff is estopped by res judicata from asserting in this court any claims based on fraud, false pretenses or false representations.

Plaintiff argues that the Motion to Dismiss should be denied for two reasons: (1) the Agreed Judgment was not a final judgment on the merits; and (2) there is no identity of cause of action.

### B.  Standard of review for a motion to dismiss

#### 1.  Elements of a motion to dismiss

To defeat a motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7012, a complaint must describe the claim in enough detail to give notice to the defendant.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In addition, it must be "plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### 2.  Resolving a question of res judicata in a motion to dismiss

Before proceeding to the merits of Defendant's arguments, the court must resolve two threshold issues.  First, res judicata is generally raised in an answer to a complaint, as an affirmative defense.  "But when an affirmative defense is disclosed in the complaint, it provides a proper basis for a Rule 12(b)(6) motion….  No purpose would be served by compelling the defendant to file an answer rather than proceed by motion when the plaintiff has pleaded the answer himself."  *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008).  Therefore, the court may proceed to determine the issue of whether the Complaint fails to state a claim on the grounds that the allegations pleaded in the Complaint compel the application of the doctrine of res judicata.

#### 3.  Attaching documents to a motion to dismiss

Second, Defendant attached two documents to the Motion to Dismiss.  Submission of documents not attached to a complaint will often result in a motion to dismiss being treated as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6)

or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

That need not happen in this case. "The courts … have crafted a narrow exception to this rule to permit a district court to take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). The two documents attached to the Motion to Dismiss are public records from previous litigation, so the court may consider them without converting this dispute into a motion for summary judgment.

**4. Elements of Plaintiff's claims for relief**

Plaintiff seeks relief under two subsections of the Bankruptcy Code. The first and second counts of the Complaint are brought under 11 U.S.C. § 523(a)(2)(A) and the third under § 523(a)(3):

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- …
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition…. [or]
> >
> > (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--
> >
> > > (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
> > >
> > > (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under

7

one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

### C. Res Judicata does not defeat the Complaint

#### 1. Elements of res judicata

Defendant contends that the Agreed Judgment precludes Plaintiff from proceeding with her Complaint, and from seeking relief under 11 U.S.C. §§ 523(a)(2) and (a)(3). "The effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment[.]" *In re Catt*, 368 F.3d 789, 790–91 (7th Cir.2004) (citations omitted). *See* 28 U.S.C. § 1738; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999). In this proceeding, an Illinois state court entered the Agreed Judgment. Therefore, Illinois law determines its effect.

According to the Illinois Supreme Court, "a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties … on the same cause of action." *Rein v. David A. Noyes & Co.*, 665 N.E. 2d 1199, 1204 (Ill. 1996). Res judicata bars "what was actually decided in the first action, as well as those matters that could have been decided in that suit." *River Park, Inc. v. City of Highland Park*, 703 N.E. 2d 883, 889 (Ill. 1998).

"For the doctrine of *res judicata* to apply, three requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies." *Rein*, 665 N.E.2d at 1204.

#### 2. One of the requirements has not been met – there is no identity of cause of action

Plaintiff contends that her claims under §§ 523(a)(2) and (a)(3) sprang "into existence [only] upon Defendant filing a bankruptcy petition. Consequently, there exists no identity of the cause of action[.]" Response, ¶ 10. Indeed, this is precisely why "[r]es judicata generally does

8

not apply to dischargeability actions under § 523 of the Bankruptcy Code….  The issue of dischargeability does not arise until a debtor files for bankruptcy, so no dischargeability 'claim' could have been adjudicated or extinguished in a previous lawsuit in which judgment was entered before the debtor filed her petition." *In re Draiman*, No. 05 A 01783, 2006 WL 1876972, at *3 (Bankr. N.D. Ill. June 22, 2006) (quotation and citations omitted).

### a. Res judicata generally does not bar litigation of dischargeability claims

Precedent supports the Plaintiff's position.  Courts are generally in agreement that res judicata, also known as claim preclusion, does not prevent a state court plaintiff from litigating the question of dischargeability in bankruptcy court.  *Brown v. Felsen*, 442 U.S. 127, 138–39 (1979) ("W]e hold that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt.").  *See Boscarino v. Borsellino* (*In re Borsellino*), 619 B.R. 910, 919 (Bankr. N.D. Ill. 2020) ("Claim preclusion does not apply, however, in either § 523 dischargeability or § 727 discharge actions, as the determination of these actions falls within the exclusive purview of the bankruptcy court."); *Layng v. Jaime* (*In re Jaime*), No. AP 16-A-96048, 2017 WL 3908088, at *3 (Bankr. N.D. Ill. Sept. 1, 2017) ("The Supreme Court has held that because the Bankruptcy Code grants bankruptcy courts sole jurisdiction to determine the dischargeability of debts based on the actual fraud exception, prior state court judgments do not have *res judicata* effect to such dischargeability matters[.]"); *Crowe v. Moran* (*In re Moran*), 413 B.R. 168, 178-79 (Bankr. D. Del. 2009) ("*res judicata* does not bar the Crowes from asserting their section 523(a)(2) and (a)(4) claims … because state courts cannot determine whether debts of a kind specified in sections 523(a)(2) and (a)(4) are non-dischargeable in bankruptcy").

9

As the Seventh Circuit explained, declining to apply res judicata in dischargeability proceedings can work to the benefit of either a creditor or a debtor:

> Just as the debtor in *Graham*, who agreed to a stipulation including penalties for fraudulent underpayment of taxes, was allowed to deny fraud in his discharge proceeding, so must the government, which agreed to a stipulation precluding fraud penalties, be allowed to claim fraud in Levinson's discharge proceeding. By refusing to apply res judicata in either case, the bankruptcy court has the opportunity to determine the truth, and so implement the policies behind the Code, rather than binding the parties to strategic decisions made in a different context.

*Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992).

In the state court Lawsuit, Plaintiff brought claims for breach of contract and common law fraud. While her factual allegations in the Lawsuit may be substantially similar to those in the Complaint before the court today, her claims for relief could not be. Since Defendant had not yet filed for relief under the Bankruptcy Code, Plaintiff could not have asked the state court to find that any debt Defendant owed to her was nondischargeable.

### b. Plaintiff's decision to agree to dismissal of her fraud count in the Agreed Judgment does not compel a different result

Defendant argued in his Reply that "[t]he fraud count was filed and available for consideration and reconciliation, yet the plaintiff voluntarily chose to drop it. If Plaintiff was serious about her fraud charges, she should have pursued them in state court…. She should not be rewarded with a second chance." (Reply, ¶ 11.)

But Plaintiff is not seeking a "second chance" to hold Defendant liable. She seeks instead a finding that his liability to her – already liquidated by the state court – is not dischargeable.

For reasons unknown to this court, and which do not matter to this court, Plaintiff chose to enter into the Agreed Judgment and establish Defendant's liability only on the breach of contract count. That was her prerogative.

10

> When [dischargeability] issues are not identical to those arising under state law, the parties have little incentive to litigate them. In the collection suit, the debtor's bankruptcy is still hypothetical. The rule proposed by respondent would force an otherwise unwilling party to try [dischargeability] questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future. In many cases, such litigation would prove, in the end, to have been entirely unnecessary….
>
> Respondent also contends that petitioner had an adequate incentive to prove state-law fraud, which might have entailed proof identical to that required by § 17. Petitioner, however, rejected whatever lure exemplary damages and body execution may have provided. That rejection does not conclusively show that petitioner thought respondent was innocent of fraud. Petitioner may have thought those remedies would not be advantageous to him. While respondent is certainly entitled to claim that res judicata would bar further pursuit of those extraordinary remedies in state court, their hypothetical desirability provides no basis for preventing petitioner from recovering on the debt, the remedy he elected from the beginning.

*Brown v. Felsen*, 442 U.S. at 135, 137–38 (footnote omitted) (decided under § 17 of the Bankruptcy Act, the predecessor to § 523(a) of the Bankruptcy Code).

Defendant attempted to distinguish *Brown v. Felsen* by highlighting what he described as a "glaring difference" from this case – Custer specifically pleaded and then agreed to dismiss the fraud count.  (Reply, ¶¶ 7-8.)  This attempt is no more successful than Defendant's earlier arguments.

> Both *Brown v. Felsen* and the present case involve the debtor's defensive use of a prior state court consent judgment against a creditor's assertion in bankruptcy that a debt is nondischargeable due to fraud. Although in *Brown* the prior judgment made no mention of the fraud claims, while in the present case the prior judgment specifically dismissed the fraud claims with prejudice, this distinction makes no difference.

*Day v. Manuel* (*In re Manuel*), 76 B.R. 105, 108 (Bankr. E.D. Mich. 1987).

**D. The court is deciding only whether there is an identity of cause of action**

Res judicata is also known as claim preclusion because it precludes a party from pursuing a *claim* in future litigation.  As explained above, res judicata does not apply here because there is no identity of cause of action – only this court can analyze the *claim* of whether a debt is

11

dischargeable under 11 U.S.C. §§ 523(a)(2) and (a)(3). Collateral estoppel, however, also known as *issue* preclusion, "may be invoked to bar relitigation of the factual *issues* underlying the determination of dischargeability." *MS Int'l Inc. v. Patel* (*In re Patel*), No. 19 A 740, 2020 WL 6938796, at *2 (Bankr. N.D. Ill. Oct. 13, 2020) (emphasis added), *aff'd*, No. 20-CV-06234, 2021 WL 4355369 (N.D. Ill. Sept. 24, 2021).

Neither party raised the question of whether collateral estoppel applies, and the court will not make that decision today. *See McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991) ("What makes a system adversarial rather than inquisitorial is … the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties.").

Moreover, since there is no identity of cause of action, the court need not consider the other elements of res judicata. One of those elements involves the question of whether the Agreed Judgment is a final judgment on the merits. Plaintiff raised this issue, which Defendant addressed briefly in the Reply. While the court need not resolve the question of whether the Agreed Judgment is a final judgment, there is Supreme Court precedent explaining that "[i]n most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus consent judgments ordinarily *support claim preclusion but not issue preclusion*." *Arizona v. California*, 530 U.S. 392, 414 (quotation omitted) (emphasis added), *supplemented*, 531 U.S. 1 (2000). *See also H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 634 (7th Cir. 2020) ("[There is] no reason to believe that the Illinois Supreme Court would disavow the weight of Illinois authority, which we have read uniformly to allow claim preclusion by consent judgment[.]") (citation omitted).

12

Finally, in the Motion to Dismiss and in the Response, the parties discussed the application of *In re Mendiola*, 99 B.R. 864, 866–68 (Bankr. N.D. Ill. 1989), asserting that Judge Barnes referred to *Mendiola* when he dismissed 23 A 275.  In the Reply, however, Defendant stated in section IV that he was not seeking dismissal of the Complaint based on *Mendiola*. Therefore, the court need not address it.

## IV.     CONCLUSION

For all of the reasons stated above, the court finds that res judicata does not preclude Plaintiff from pursuing claims under 11 U.S.C. §§ 523(a)(2) and (a)(3).  Therefore, **IT IS ORDERED THAT** the Motion to Dismiss is **DENIED**.  The Complaint is set for status on August 7, 2024 at 10:30 a.m.

ENTERED:

Date:   July 23, 2024

_____
DAVID D. CLEARY
United States Bankruptcy Judge

13